Gustavo Ponce, Esq.
Nevada Bar No. 15084
Mona Amini, Esq.
Nevada Bar No. 15381
**KAZEROUNI LAW GROUP, APC**
6787 W. Tropicana Avenue, Suite 250
Las Vegas, Nevada 89103
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
E-mail: gustavo@kazlg.com
           mona@kazlg.com

Mason A. Barney*
Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com

*Attorneys for Plaintiff and the Putative Class*

*Pro hac vice* applications forthcoming

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| YVETTE BROWN**,** on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONS DIRECT MORTGAGE, LLC**,**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Yvette Brown ("Plaintiff"), individually and on behalf of all similarly situated persons, alleges the following against Nations Direct Mortgage, LLC ("Defendant" or "Nations Direct") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by her counsel and review of public documents as to all other matters:

## **INTRODUCTION**

1.     Plaintiff brings this class action against Nations Direct for its failure to properly secure and safeguard Plaintiff's and other similarly situated current and former Nations Direct customers' and employees' (collectively defined herein as the "Class" or "Class Members") personally identifiable information ("PII"), including names, addresses, Social Security numbers and unique Nations Direct loan numbers (collectively, the "Private Information") from cybercriminals.

2.     On or about December 30, 2023, Nations Direct learned that an unauthorized entity had gained access to customer information on one of its computer servers. In response, Defendant launched an investigation and notified law enforcement. Nations Direct's investigation revealed that an unauthorized party had access to certain customer and employee files on the server on an undisclosed date (the "Data Breach").

3.     As a result of the Data Breach, and in light of their Private Information now being in the hands of cybercriminals, Plaintiff and Class Members were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. This substantial and imminent risk will remain for their respective lifetimes.

4.     Armed with the Private Information accessed in the Data Breach, the cybercriminals who carried out the Data Breach can and will commit a variety of crimes, including, *e.g.*, obtaining medical services and/or prescriptions in Class

Members' names, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

5.     There has been no assurance offered by Nations Direct that all personal data or copies of data have been recovered or destroyed, or that it has adequately enhanced its data security practices sufficiently to avoid a similar breach of its network in the future.

6.     Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

7.     Plaintiff brings this class action lawsuit to address Nations Direct's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

8.     The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Nations Direct, and thus Nations Direct was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

9.     Upon information and belief, Nations Direct failed to properly monitor and implement adequate data security practices with regard to its computer network and systems that housed Plaintiff's and Class Members' Private Information. Had

Nations Direct properly monitored its networks and implemented adequate data security practices, it could have prevented the Data Breach or, at the very least, discovered the Data Breach sooner.

10.     Plaintiff's and Class Members' identities are now at risk because of Nations Direct's negligent conduct, which led to the Private Information that it collected and maintained falling into the hands of data thieves and other unauthorized third parties.

11.     Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed and exfiltrated during the Data Breach.

**PARTIES**

12.     Plaintiff Yvette Brown is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in Itasca, Illinois.

13.     Defendant Nations Direct is a mortgage lending company, with its headquarters located at 2475 Village View Drive, Suite 100, Henderson, Nevada 89074 in Clark County.

**JURISDICTION AND VENUE**

14.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Nations Direct. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15.     This Court has jurisdiction over Nations Direct because Nations Direct operates in and is incorporated in this District.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this

District and Nations Direct has harmed Class Members residing in this District.

## FACTUAL ALLEGATIONS

**A. Nations Direct's Business and Collection of Plaintiff's and Class Members' Private Information**

17.     Nations Direct is a mortgage lender specializing in residential mortgages with over 250 employees assisting customers with mortgages and other related services throughout the entire country. Nations Direct generates approximately $129,000,000 in annual revenue.

18.     As a condition of receiving mortgage lending services from and/or being employed with Nations Direct, customers and employees are required to entrust it with highly sensitive personal information.

19.     Thus, due to the highly sensitive and personal nature of the information Nations Direct acquires and stores with respect to its customers and employees, Nations Direct promises to, among other things, keep their Private Information private; comply with industry standards related to data security and the maintenance of their Private Information; inform its customers and employees of its legal duties relating to data security and comply with all federal and state laws protecting their Private Information; only use and release customers' and employees' Private Information for reasons that relate to the services it provides; and provide adequate notice to customers and employees if their Private Information is disclosed without authorization.

20.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Nations Direct assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

21.    Plaintiff and Class Members relied on Nations Direct to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

**B. <u>The Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members</u>**

22.    According to Defendant's Notice, it learned of unauthorized access to its computer systems on or around December 30, 2023, with such unauthorized access having taken place on an undisclosed date.

23.    On or about February 28, 2024, Nations Direct customers and employees began receiving their notices of the Data Breach informing them that its investigation determined that their Private Information was exposed.

24.    Nations Direct delivered Data Breach Notification Letters to Plaintiff and Class Members, alerting them that their highly sensitive Private Information had been exposed in a "security incident."

25.    The notice letter then listed time-consuming, generic steps that victims of data security incidents can take, such as getting a copy of a credit report or notifying law enforcement about suspicious financial account activity. Other than providing only twenty-four (24) months of credit monitoring, Nations Direct offered no other substantive steps to help victims like Plaintiff and Class Members to protect themselves. On information and belief, Nations Direct sent a similar generic letter to all other individuals affected by the Data Breach.

26.    Nations Direct had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

27.    Plaintiff and Class Members provided their Private Information to

Nations Direct with the reasonable expectation and mutual understanding that Nations Direct would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

28.  Nations Direct's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

29.  Nations Direct knew or should have known that its electronic records would be targeted by cybercriminals.

**C.  Nations Direct Failed to Comply with FTC Guidelines**

30.  The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

31.  In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts

of data being transmitted from the system, and have a response plan ready in the event of a breach.

32.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

33.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

34.    As evidenced by the Data Breach, Nations Direct failed to properly implement basic data security practices. Nations Direct's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

35.    Nations Direct was at all times fully aware of its obligation to protect the Private Information of its customers and employees yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D. <u>Nations Direct Failed to Comply with Industry Standards</u>**

36.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

37.   Some industry best practices that should be implemented by businesses dealing with sensitive PII like Nations Direct include but are not limited to: education of all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

38.   Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

39.   Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

40.   Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**E. Nations Direct Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information**

41.   In addition to its obligations under federal and state laws, Nations Direct owed a duty to Plaintiff and Class Members to exercise reasonable care in

obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Nations Direct owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

42.     Nations Direct breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Nations Direct's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

     a.  Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

     b.  Failing to adequately protect customer and employee Private Information;

     c.  Failing to properly monitor its own data security systems for existing intrusions;

     d.  Failing to sufficiently train its employees regarding the proper handling of customer and employee Private Information;

     e.  Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA; and

     f.  Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

43.     Nations Direct negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

44. Had Nations Direct remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

45. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Nations Direct.

**F. Nations Direct Should Have Known that Cybercriminals Target PII to Carry Out Fraud and Identity Theft**

46. The FTC hosted a workshop to discuss "informational injuries," which are injuries that individuals like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[1] Exposure of highly sensitive personal information that an individual wishes to keep private may cause harm to that individual, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

47. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why

---

[1] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on April 10, 2024).

criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

48.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

49.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

50.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

51.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[2] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

52.     Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including medical identity theft, credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information.

---

[2] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited April 10, 2024).

53.     In fact, a study by the Identity Theft Resource Center[3] shows the multitude of harms caused by fraudulent use of PII:



54.     The ramifications of Nations Direct's failure to keep its customers' and employees' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

55.     Here, not only was sensitive unique Nations Direct loan numbers information compromised, but Social Security numbers were compromised too. The value of PII is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

56.     PII are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

---

[3] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on April 10, 2024).

57.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

### G. **Plaintiff's and Class Members' Damages**

*Plaintiff Brown's Experience*

58.     Plaintiff Brown was an employee at Nations Direct, at which time she provided Nations Direct with substantial amounts of her PII.

59.     On or about February 28, 2024, Plaintiff received notice from Defendant alerting her that her Private Information had been accessed during the Data Breach.

60.     The notice letter offered Plaintiff only 24 months of credit monitoring services – an insufficient remedy considering Plaintiff will now experience a lifetime of increased risk of identity theft.

61.     Plaintiff suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

62.     Plaintiff would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its customers' personal information from theft, and that those systems were subject to a data breach.

63.     Plaintiff suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.

64.     Plaintiff Brown suffered actual injury in the form of damages to and diminution in the value of her personal and financial information – a form of intangible property that Plaintiff entrusted to Defendant for the purpose of being an employee for Defendant and which was compromised in, and as a result of, the Data

Breach.

65.   Plaintiff suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

66.   Plaintiff has a continuing interest in ensuring that her Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches.

67.   As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant. Plaintiff has already spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

68.   As a result of the Data Breach, Plaintiff has suffered anxiety as a result of the release of her Private Information, which she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of committing cyber and other crimes against her including, but not limited to, fraud and identity theft. Plaintiff is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on her life.

69.   Plaintiff also suffered actual injury from having her Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of her PII, a form of property that Defendant obtained from Plaintiff; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now

faces.

70.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

71.    In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

72.    Plaintiff and Class Members entrusted their Private Information to Defendant in order to receive Defendant's services.

73.    Their Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

74.    As a direct and proximate result of Nations Direct's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

75.    Further, and as set forth above, as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

76.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

77.   Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

78.   The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

79.   Plaintiff and Class Members also lost the benefit of the bargain they made with Nations Direct. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price paid by Plaintiff and Class Members (or, in some cases, on their behalf) to Nations Direct was intended to be used by Nations Direct to fund adequate security of Nations Direct's system and protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive the benefit of the bargain.

80.   Additionally, Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[4] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn

---

[4] *See* https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/#:~:text=The%20business%20of%20data%20brokering,annual%20revenue%20of%20%24200%20billion. (last visited on April 10, 2024).

receive up to $50 a year.[5]

81.     As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

82.     Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

      a.  Monitoring for and discovering fraudulent charges;

      b.  Canceling and reissuing credit and debit cards;

      c.  Addressing their inability to withdraw funds linked to compromised accounts;

      d.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

      e.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

---

[5] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited April 10, 2024).

f.   Contacting financial institutions and closing or modifying financial accounts;

g.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

h.   Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

i.   Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

83.   Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Nations Direct, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal  information of its customers and employees is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

84.   As a direct and proximate result of Nations Direct's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

85.   Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

86.   Specifically, Plaintiff proposes the following Nationwide Class, subject to amendment as appropriate:

**Nationwide Class**

All individuals whose PII was compromised in the Nations Direct Data Breach for which notice letters were sent on or around February 28, 2023.

87.     Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

88.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

89.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

90.     <u>Numerosity</u> – The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of at least 83,108 current and former customers and employees of Nations Direct whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Nations Direct's records, Class Members' records, publication notice, self-identification, and other means.

91.     <u>Commonality</u> – There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

           a.  Whether Nations Direct engaged in the conduct alleged herein;

           b.  Whether Nations Direct's conduct violated the FTCA;

           c.  When Nations Direct learned of the Data Breach;

d. Whether Nations Direct's response to the Data Breach was adequate;

e. Whether Nations Direct unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Nations Direct failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g. Whether Nations Direct's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether Nations Direct's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether Nations Direct owed a duty to Class Members to safeguard their Private Information;

j. Whether Nations Direct breached its duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether Nations Direct had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m. Whether Nations Direct breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n.  Whether Nations Direct knew or should have known that its data security systems and monitoring processes were deficient;

o.  What damages Plaintiff and Class Members suffered as a result of Nations Direct's misconduct;

p.  Whether Nations Direct's conduct was negligent;

q.  Whether Nations Direct was unjustly enriched;

r.  Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

s.  Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

92.  <u>Typicality</u> – Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Nations Direct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff individually. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

93.  <u>Adequacy of Representation</u> – Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

94.     <u>Superiority</u> – A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Nations Direct. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

95.     Finally, all members of the proposed Class are readily ascertainable. Nations Direct has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Nations Direct.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On behalf of Plaintiff and the Class)**

96.     Plaintiff restates and realleges all of the allegations in every preceding paragraph as if fully set forth herein.

97.     Nations Direct knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information

from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

98.     Nations Direct knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Nations Direct was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

99.     Nations Direct owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Nations Direct's duties included, but were not limited to, the following:

> a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;
>
> b. To protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;
>
> c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;
>
> d. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and
>
> e. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

100.   Nations Direct's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable

measures to protect confidential data.

101.   Nations Direct's duty also arose because Defendant was bound by industry standards to protect its customers' and employees' confidential Private Information.

102.   Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Nations Direct owed them a duty of care to not subject them to an unreasonable risk of harm.

103.   Nations Direct, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Nations Direct's possession.

104.   Nations Direct, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

105.   Nations Direct, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

106.   Nations Direct breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

> a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;
>
> b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to comply with the FTCA; and

f. Failing to detect in a timely manner that Class Members' Private Information had been compromised.

107. Nations Direct had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Nations Direct with their Private Information was predicated on the understanding that Nations Direct would take adequate security precautions. Moreover, only Nations Direct had the ability to protect its systems (and the Private Information that it stored on them) from attack.

108. Nations Direct's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

109. As a result of Nations Direct's ongoing failure to notify Plaintiff and Class Members regarding exactly what Private Information has been compromised, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

110. Nations Direct's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

111. As a result of Nations Direct's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

112. As a direct and proximate result of Nations Direct's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

113. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

114. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

115. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Nations Direct to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

116. Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

117. Nations Direct provides mortgage services and/or employment to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendant regarding the provision of those services and/or employment through their collective conduct, including by Plaintiff and Class Members turning over their valuable Private Information to Defendant.

118. Through Defendant's offering of these services and/or employment, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with Nations Direct's policies, practices, and applicable law.

119. As consideration, Plaintiff and Class Members turned over valuable

Private Information to Nations Direct. Accordingly, Plaintiff and Class Members bargained with Nations Direct to securely maintain and store their Private Information.

120.   Nations Direct accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing mortgage services and/or employment to Plaintiff and Class Members.

121.   In delivering their Private Information to Nations Direct, Plaintiff and Class Members intended and understood that Nations Direct would adequately safeguard the Private Information as part of that service.

122.   Defendant's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; and (8) taking other steps to protect against foreseeable data breaches.

123.   Plaintiff and Class Members would not have entrusted their Private Information to Nations Direct in the absence of such an implied contract.

124.   Had Nations Direct disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Nations Direct and would have sought mortgage services and/or employment elsewhere.

125.   As a provider of mortgage lending services, Nations Direct recognized (or should have recognized) that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

126.   A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide accurate and complete Private Information to Nations Direct in exchange for Nations Direct's agreement to, *inter alia*, protect their Private Information.

127.   Plaintiff and Class Members have been damaged by Nations Direct's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

128.   Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

129.   This cause of action is pleaded in the alternative to Plaintiff's second cause of action above.

130.   Plaintiff and Class Members conferred a benefit on Nations Direct by turning over their valuable Private Information to Defendant with the understanding that the benefits earned from possession and control thereof would be utilized, in part, to provide adequate data security to protect such Private Information. Plaintiff and Class Members did not receive such protection.

131.   Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business

purposes.

132.   Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

133.   Defendant acquired the Private Information through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

134.   If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information with Defendant or become employees and/or customers of Defendant.

135.   Plaintiff and Class Members have no adequate remedy at law.

136.   Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

137.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) dissemination of their Private Information on the dark web; (ix) statutory damages; (x) nominal damages; and (xi) the continued and certainly increased risk to their Private

Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

138.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONFIDENCE**
**(On behalf of Plaintiff and the Class)**

139.   Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

140.   Plaintiff and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and ultimately accessed and acquired in the Data Breach.

141.   As a mortgage company, Defendant has a special, fiduciary relationship with its customers and employees, including Plaintiff and Class Members. Because of that special relationship, Defendant was provided with and stored Plaintiff's and Class Members' Private Information and had a duty to maintain such Information in confidence.

142.   Customers and/or employees, like Plaintiff and Class Members, have a privacy interest in personal, financial, and other matters, and Defendant had a duty not to disclose such matters concerning them.

143.   Plaintiff and Class Members did not consent nor authorize Defendant

to release or disclose their Private Information to an unknown criminal actor.

144.    Defendant breached its duty of confidence owed to Plaintiff and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer and/or employee information that resulted in the unauthorized access and compromise of Plaintiff's and Class Members' Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices; and (h) making an unauthorized and unjustified disclosure and release of Plaintiff's and Class members' Private Information to a criminal third party.

145.    But for Defendant's wrongful breach of its duty of confidence owed to Plaintiff and Class Members, their Private Information would not have been compromised.

146.    As a direct and proximate result of Defendant's wrongful breach of its duty of confidence, Plaintiff and Class Members have suffered and will continue to suffer the injuries alleged herein.

147.    It would be inequitable for Defendant to retain the benefit of controlling and maintaining Plaintiff's and Class Members' Private Information at the expense of Plaintiff and Class Members.

148.    Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or

restitution, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper and adequate representative of the Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Nations Direct to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Nations Direct to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. An order requiring Nations Direct to implement enhanced data security measures in order to better protect the PII in its possession and control;

g. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h. An award of such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all triable issues.

DATED: April 10, 2024

*/s/  Mona Amini*

Mona Amini, Esq.
Gustavo Ponce, Esq.
**KAZEROUNI LAW GROUP, APC**
6787 W. Tropicana Ave., Suite 250
Las Vegas, Nevada 89103
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
gustavo@kazlg.com
mona@kazlg.com

**SIRI & GLIMSTAD LLP**
Mason A. Barney*
Tyler J. Bean*
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

*Attorneys for Plaintiff Yvette Brown
and the Putative Class*

**Pro hac vice* applications forthcoming